## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

ARIYANNA LYNCH,

               Plaintiff,

   v.

JAVARA, INC. and
AMANDA LANE-PETERSON,

           Defendant.

CIVIL ACTION FILE NO.
3:24-cv-00200-LMM-RGV

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Ariyanna Lynch ("Lynch") brings this action against Javara, Inc. ("'Javara"), and Amanda Lane-Peterson ("Lane-Peterson"), jointly referred to as "defendants," asserting claims against Javara for a sexually hostile work environment, retaliatory sexual harassment, and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), as well as a state law claim of intentional infliction of emotional distress ("IIED") against both defendants.  [Doc. 1].[1]  Javara has filed a motion to dismiss the complaint, [Doc. 7], which Lynch opposes, [Doc. 10], and Javara has filed a reply in support of its motion, [Doc. 12].  For the reasons that follow, it is **RECOMMENDED** that Lynch's claims

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

against Lane-Peterson be **DISMISSED WITHOUT PREJUDICE** for failure to serve, and that Javara's motion to dismiss the complaint, [Doc. 7], be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2023, Lynch began working for Javara, a company whose mission was to "deliver clinical research as a care option," as a Clinical Administrative Support Specialist, reporting to Monique Carignan ("Carignan"), Senior Manager of Clinical Operations, at Javara's Fayetteville, Georgia, location. [Doc. 1 ¶¶ 9, 12-13].[2] Lane-Peterson, a Clinical Trial Navigator II at Javara, sat near Lynch in the office and directed her work on a regular basis, though she "did not have the ability to make unilateral discipline decisions regarding [] Lynch[.]" [Id. ¶ 15].

On December 13, 2023, Lynch's father, Adrian Lynch ("A. Lynch"), stopped by the office to visit Lynch and take her to lunch. [Id. ¶ 16]. Lynch alleges, upon information and belief, that during that visit, Lane-Peterson noticed A. Lynch and "began developing a physical attraction towards him," [id.], and "[n]ot long thereafter, [] Lane-Peterson began making crass comments to [] Lynch and others within earshot about [ her] father." [Id. ¶¶ 16-17]. Among other crude comments, Lane-Peterson allegedly stated to Lynch and others that A. Lynch "was a 'whore, not

_____

[2] The factual background is taken from the pleadings and exhibits and does not constitute findings of fact by the Court.

2

a hoe,' and that [] Lynch's mother—who was married to [A.] Lynch—was a 'lucky . . . woman.'"  [Id. ¶ 18].  Lynch alleges that she was "surprised and dismayed by [] Lane-Peterson's comments," but she chose not to report the comments to Javara at that time "because [] Lane-Peterson was in a supervisory capacity over [ her] — and because [ she] had just started work at Javara," so "Lynch tried to handle it herself and pretended to laugh them off."  [Id. ¶ 19].

Lynch alleges that Lane-Peterson "continued to make lewd and crass comments regarding [A.] Lynch to [ her]," including asking her "if she 'needed a new mom,' with the obvious insinuation being that [] Lane-Peterson wished to engage in a physical relationship with [A.] Lynch," and vowing "to 'steal' [A.] Lynch away from [] Lynch's mother."  [Id. ¶ 20].  Because Lane-Peterson continued to make such comments, Lynch "politely asked [] Lane-Peterson to stop making comments about [A.] Lynch" in December 2023, [id. ¶ 21], but Lane-Peterson refused to do so and "continued to tell [] Lynch how attracted she was to [A.] Lynch, oftentimes in front of others, and showed no signs of respecting [] Lynch's requests to stop," [id. ¶ 22].  Lynch alleges that "in late January or early February 2024, [ she] reported to [] Carignan that [] Lane-Peterson had been making crude and inappropriate comments about [A.] Lynch and refused to stop, despite [ her] asking her to do so," and informed her that Lane-Peterson's "continued comments made her uncomfortable,"

[id.], but Carignan "failed to take any action in response to [] Lynch's complaint," [id. ¶ 23], which "only allowed the harassment to become more severe," [id. ¶ 24].

In February 2024, A. Lynch enrolled in a clinical trial with Javara, [id. ¶ 25], and on March 13, 2024, he visited Javara to participate in the clinical trial, following which Lane-Peterson "made more crude and crass comments to [] Lynch about [her father's] looks and her attraction to him," [id. ¶ 26]. Lynch asserts that although she "repeatedly ask[ed ] Lane-Peterson to stop talking about her father in a sexual manner," Lane-Peterson's "comments only became more direct[.]" [Id. ¶¶ 26-27]. As an example, Lynch alleges that on May 31, 2024, Lane-Peterson asked her for her father's contact information in the event she needed to reach him in an emergency, but Lynch believes that, "[i]n reality, . . . it was so that [] Lane-Peterson could reach out to [A.] Lynch directly for sex." [Id. ¶ 27]. Lynch refused to provide her father's contact information, and Lane-Peterson allegedly responded that she would "look up [ his] information in Javara's electronic medical records database." [Id. ¶ 28].

Lynch alleges that after Lane-Peterson obtained A. Lynch's contact information from Javara's electronic medical records database, she "began sending increasingly explicit messages of a sexual nature to [A.] Lynch, including photos and videos of her in various stages of undress." [Id. ¶¶ 29-30]. Lynch further alleges that Lane-Peterson and A. Lynch "ultimately met up for sex on several occasions," [id. ¶ 32], and on June 5, 2024, Lynch's mother informed her that she found text messages

4

between A. Lynch and Lane-Peterson on A. Lynch's phone indicating their sexual relationship, and that Lynch's parents "were getting divorced," [id. ¶ 33]. That same day, Lynch reported to Carignan what she had learned about Lane-Peterson's relationship with her father and complained that Lane-Peterson had "made repeated sex-based comments about [A.] Lynch without any consequence," and Lynch "expressed her belief that [] Lane-Peterson had inappropriately taken [A.] Lynch's contact information from Javara's electronic medical records database and reached out to him for sex, as she'd boasted she'd do." [Id. ¶ 34]. Lynch alleges that "all [] Carignan did in response to [ her] disclosure that [] Lane-Peterson [] had sex with her dad after stealing his contact information from Javara's electronic medical records database was to talk to her supervisor about it, who suggested that [] Carignan 'do nothing,'" and "that's what she and Javara did — nothing." [Id. ¶ 36]. Lynch alleges that, at some unspecified point in time, Lane-Peterson "accosted [ her] in the employee parking lot and tried to explain her actions, which only re-traumatized [ her]." [Id. ¶ 38].

Lynch alleges that she "made the decision to resign her employment," since "it had become clear that no one at Javara had any intention of helping [ her] in any way and that she'd be forced to face her harasser — and the woman who tried to wreck her parents' marriage — on a daily basis," [id. ¶ 39], and on June 18, 2024, she "met with [] Carignan to announce her resignation," [id. ¶ 40]. Lynch alleges that during

their meeting, Carignan "explicitly stated to [ her] that her supervisor had given her direction to not take any action with respect to [] Lynch's complaint from June 5," and Lynch told Carignan that she "intended to submit a written complaint to human resources," and Carignan "warned [ her] to expect a reaction from Javara if she sent the written complaint." [Id.]. Later that day, Lynch emailed her complaint to Carignan, explaining that "she felt forced to resign her employment because of the despicable ongoing treatment from [] Lane-Peterson," [id. ¶ 41], and Lynch's employment with Javara ended on June 28, 2024, [id. ¶ 42].

On July 11, 2024, Lynch filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging, among other things, that on April 29, 2024, Lane-Peterson began making sexually explicit comments about her father, and that on June 5, 2024, she complained to Carignan about an audio recording Lane-Peterson sent to her on May 31, 2024, in which Lane-Peterson called her father "a hoe, saying [her] dad was attractive," and that Lynch knew how Lane-Peterson "like[d] them." [Id. ¶ 7; Doc. 7-1 at 2-3].[3] Lynch further alleged that due to tension between her and Lane-Peterson, Carignan placed them in separate offices,

_____

[3] The Court notes that the "EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it is not attached to a pleading." Stamps v. McDonough, CIVIL ACTION NO. 1:21-CV-3562-MLB-JSA, 2022 WL 22893193, at *6 (N.D. Ga. May 12, 2022) (citations and internal marks omitted), adopted by 2022 WL 22893189, at *1 (N.D. Ga. July 15, 2022).

and after she submitted her two-week notice on June 17, 2024, to resign on June 28, 2024, "[o]n June 21, 2024, CEO Jennifer Burn came to the office regarding [her] complaint and [ Lane-]Peterson was terminated."  [Doc. 7-1 at 3].  On July 26, 2024, the EEOC issued a Determination and Notice of Rights letter.  [Id. at 5-6].

On October 23, 2024, Lynch filed the instant complaint, asserting Title VII claims against Javara of a sexually hostile work environment, retaliatory sexual harassment, and constructive discharge, as well as an IIED claim against both defendants.  [Doc. 1].  Javara moves to dismiss the complaint, [Doc. 7], which Lynch opposes, [Doc. 10], and Javara has filed a reply in support of its motion, [Doc. 12].  The pending motion to dismiss, [Doc. 7], is now ripe for ruling.

## II. DISCUSSION

### A. <u>Motion to Dismiss, [Doc. 7]</u>

#### 1. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the Court must accept Lynch's allegations as true and construe the complaint in her favor.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993); <u>Tapsoba v. Khiani Alpharetta, LLC</u>, Civil Action No. 1:13–CV–1519–RWS, 2013 WL

4855255, at *1 (N.D. Ga. Sept. 11, 2013).[4] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ Lynch's] obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level," id. (footnote and citation omitted), as the complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the

---

[4] "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'" Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Id. at 678-79 (last alteration in original) (citations omitted); see also Evans v. Ga. Dep't of Behav. Health & Developmental Disabilities, CV 415-103, 2018 WL 4610630, at *3 (S.D. Ga. Sept. 25, 2018) (alterations in original) (citation and internal marks omitted) ("Although there is no probability requirement at the pleading stage, something beyond . . . mere possibility . . . must be alleged.").

"While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 556), "[t]o state a plausible claim for relief, a plaintiff must go beyond merely pleading the 'sheer possibility' of unlawful activity by defendant[s] and so must offer 'factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged,'" Stabb v. GMAC Mortg., LLC, 579 F. App'x 706, 708 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013) (citations and internal marks omitted), adopted at 1336; see also Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308

(11th Cir. 2006) (per curiam) (citation omitted); <u>Marshall Cnty. Bd. of Educ. v.</u> <u>Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

**2.  *Analysis***

Lynch alleges Title VII claims against Javara of a hostile work environment, retaliatory sexual harassment, and constructive discharge, as well as an IIED claim against both defendants.  [Doc. 1].  Javara moves to dismiss all the claims asserted against it in the complaint for failure to state any plausible claim.  [Doc. 7]. Specifically, Javara argues that Lynch "cannot establish a hostile work environment claim under Title VII because she has not established: she belongs to a protected group, she was subjected to unwelcome harassment based on sex, there was sexual harassment that was sufficiently severe and pervasive, and a basis for holding [ it] liable."  [Doc. 7 at 1-2].  Javara next contends that Lynch "cannot establish a claim of constructive discharge because [she] did not establish intolerable working conditions justifying a resignation," [<u>id.</u> at 2], and that she "cannot plausibly state a claim for retaliation because she did not engage in protected activity, there was no adverse action, and no causal connection between any protected activity and adverse action," [<u>id.</u>].  Javara also asserts that Lynch "cannot establish a claim for [IIED] because [she] failed to: allege intentional, reckless[,] extreme[,] or outrageous conduct by [ Javara], a requisite causal connection between wrongful conduct and emotional distress, and severe emotional distress."  [<u>Id.</u>].

In response, [Doc. 10], Lynch argues that Javara's motion should be denied in its entirety because her complaint "contains the requisite factual support to plausibly set out each of her claims for relief," and "[t]hat's all that's required to satisfy Rule 12's plausibility standard," [id. at 5 (citation omitted)]. In reply, Javara reiterates its arguments that Lynch has failed to state any plausible claims against it in her complaint, see [Doc. 12], and the parties' contentions will be addressed in greater detail with respect to each of the claims asserted in Lynch's complaint.

### a.     Hostile Work Environment

Lynch alleges that she "was subjected to severe and pervasive sexual harassment from a supervisor, [] Lane-Peterson," who made inappropriate comments about her father, and although she "repeatedly asked [] Lane-Peterson to stop harassing her," she "refused to do so," and despite making "repeated complaints to [] Carignan about [] Lane-Peterson's ongoing harassment," she "did nothing to help." [Doc. 1 ¶¶ 17-18, 20, 26-27, 44-46]. Lynch asserts that Lane-Peterson's "harassment . . . escalated to the point where [ she] stole [A.] Lynch's contact information from Javara's electronic medical records system, then reached out to him to have sex with him." [Id. ¶ 47]. Javara moves to dismiss Lynch's hostile work environment sexual harassment claim, arguing that she "cannot establish a hostile work environment claim under Title VII because she has not established: she belongs to a protected group, she was subjected to unwelcome harassment based on

sex, there was sexual harassment that was sufficiently severe and pervasive, and a basis for holding [ it] liable."  [Doc. 7 at 1-2].

"Title VII prohibits sex-based discrimination that alters the terms and conditions of employment."  Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship, 490 F.3d 1302, 1308 (11th Cir. 2007) (citation omitted).  "Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as 'hostile work environment' harassment), and harassment that does result in a tangible employment action (traditionally referred to as '*quid pro quo*' harassment)."  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000) (citation omitted); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751-54 (1998) (noting that the terms "*quid pro quo*" and "hostile work environment" retain limited utility in "making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether").[5]  Under the tangible employment action theory, Lynch "must prove that the harassment culminated in a 'tangible employment action' against her," and under the "'hostile work environment' theory, [ Lynch] must prove that she suffered

---

[5] "The Supreme Court in [Ellerth], instructed that the term quid pro quo should no longer be used and the courts now use the term tangible employment action to refer to harassment that culminates in a discharge, demotion, or undesirable reassignment."  Beasley v. Wal-Mart Stores E., L.P., Civil Action No. 05-0620-KD-B, 2006 WL 3449144, at *9 n.7 (S.D. Ala. Nov. 29, 2006) (internal marks omitted) (quoting Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004)).

'severe or pervasive conduct.'" Odom v. Coastal States Auto. Grp. Mgmt., LLC, CIVIL ACTION NO.: 4:20-cv-264, 2022 WL 3586693, at *7 (S.D. Ga. Aug. 22, 2022) (citation omitted); see also Penson v. Dalton Heating & Air Conditoning, Inc., CIVIL ACTION FILE NO. 4:23-CV-00228-WMR-WEJ, 2024 WL 5320188, at *12 n.12 (N.D. Ga. Oct. 7, 2024). "Stated differently, tangible employment action and hostile environment . . . are the two alternative [theories] a plaintiff may [use to] establish a basis for the employer's vicarious liability, which is the fifth factor of a Title VII sexual harassment claim." Odom, 2022 WL 3586693, at *7 (alterations in original) (citations and internal marks omitted).

Lynch alleges a claim of hostile work environment sexual harassment, and in order to establish a prima facie case, Lynch must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon her sex; (4) the harassment complained of was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) the employer "knew or should have known of the harassing conduct but failed to take prompt remedial action." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275, 1278 (11th Cir. 2002) (citing Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000)); see also Kurtts v. Chiropractic Strategies Grp., Inc., 481 F. App'x 462, 465 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted); Bruno v. Monroe Cnty., 383 F. App'x 845, 847-48 (11th Cir. 2010) (per curiam) (unpublished)

(citation omitted); <u>Watson v. City of Warner Robins</u>, CIVIL ACTION NO. 5:22-cv-192 (MTT), 2025 WL 933158, at *12 (M.D. Ga. Mar. 27, 2025) (citation omitted); <u>Griffith v. Exel, Inc.</u>, CIVIL ACTION NO. 1:14-CV-1754-ODE-JSA, 2016 WL 8938585, at *17 (N.D. Ga. Feb. 5, 2016) (citations omitted), adopted by 2016 WL 8938512, at *5 (N.D. Ga. Mar. 25, 2016). Javara argues that Lynch's claim is premised on Lane-Peterson's comments and actions regarding Lynch's father and their consensual sexual relationship, but the alleged comments and actions bore no relation to Lynch's sex, and therefore, she is not part of a protected class based on the conduct alleged in the complaint, and she cannot establish that she was subjected to unwelcome harassment based on her sex or that the harassing behavior was sufficiently severe or pervasive to alter the terms and conditions of her employment.[6] [Doc. 7 at 6-13; Doc. 12 at 3-8].

---

[6] Javara also argues that there is no basis for holding it liable for Lane-Peterson's conduct. [Doc. 7 at 13-14]. To establish this affirmative defense, an employer must show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer[.]" <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998). However, a "plaintiff is 'not required to negate an affirmative defense in [her] complaint,'" and generally, "'the existence of an affirmative defense will not support a motion to dismiss.'" <u>Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP</u>, 609 F. App'x 972, 976 (11th Cir. 2015) (per curiam) (unpublished) (citations omitted). Although "[a] complaint may be dismissed . . . when the existence of an affirmative defense 'clearly appears on the face of the complaint,'" <u>id.</u> (citations omitted), Javara has not established that "it is plainly apparent from the face of the [] [c]omplaint that [Lynch] failed to avoid harm or utilize available remedial opportunities," and therefore, it "fails to establish that dismissal is warranted" based on the *Faragher/Ellerth* defense at this stage of the

Lynch asserts that, "as a woman, [she] belongs to a protected class," [Doc. 10 at 6 (emphasis omitted)], and that "Lane-Peterson's sexual comments, insinuations, teasing, and jokes about [ her] father constitute actionable harassment," [id. at 7 (emphasis omitted)]. Lynch also argues that Lane-Peterson's repeatedly expressed desire over more than seven months "to have sex with [ her] dad, then proudly shar[ing] her plan to do so, which she followed through on," constitutes severe and pervasive harassment. [Id. at 9]. For the reasons that follow, Lynch has failed to state a plausible claim of hostile work environment sexual harassment.

Title VII "does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex." Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1301–02 (11th Cir. 2007); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998); Wheatfall v. Bd. of Regents of Univ. Sys. of Ga., 9 F. Supp. 3d 1342, 1359 (N.D. Ga. 2014) (citation omitted). "Therefore, workplace harassment is not 'automatically discrimination because of sex merely because the

_____

proceedings, Ponce v. Skyhop Glob., LLC, Case No. 1:20-CV-21847-KMM, 2020 WL 13664692, at *4 (S.D. Fla. Nov. 9, 2020) (citation omitted); see also Carroll v. ATA Retail Servs., Inc., CIVIL ACTION NO. 1:14-CV-0747-WBH, 2014 WL 12668678, at *1 (N.D. Ga. Nov. 19, 2014) (explaining that the Faragher/Ellerth inquiry must be made at the summary judgment stage and not at the motion to dismiss stage since "[i]n order to prevail on its [Faragher/Ellerth] defense, this Court must make certain findings of fact, and at this stage of the proceeding, the evidentiary basis for many of those findings is nonexistent").

words used have sexual content or connotations.'" <u>McAboy v. Westervelt Co.</u>, 7:17-cv-00813-LSC, 2018 WL 6504511, at *11 (N.D. Ala. Dec. 11, 2018) (quoting <u>Oncale</u>, 523 U.S. at 80). Rather, Lynch must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion] . . . because of . . . sex.*" <u>Whitehurst v. Liquid Env't Sols., Inc.</u>, 45 F. Supp. 3d 1328, 1343–44 (M.D. Fla. 2014) (alterations in original) (internal marks omitted) (quoting <u>Oncale</u>, 523 U.S. at 81).

"In *Oncale,* the Supreme Court noted the difficulties presented by the third element of a hostile environment claim where, as here, the alleged perpetrator[] and the plaintiff are of the same sex." <u>Id.</u> at 1343 (citation omitted). "While recognizing that '[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations,'" the "Supreme Court identified in dicta three ways to prove that same-sex sexual harassment occurred because of sex":

> (1) if there were credible evidence that the harasser was homosexual or that the harassing conduct was motivated by actual homosexual desire; (2) if the harassment occurs in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility [towards members of the same sex] in the workplace[;] and (3) if there is direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.

<u>Id.</u> (alterations in original) (citations and internal marks omitted) (quoting <u>Oncale</u>, 523 U.S. at 80–81). Lynch has not alleged facts that plausibly support any of these avenues for establishing same-sex sexual harassment. Indeed, nothing in her

complaint even hints that Lane-Peterson's sexual comments, insinuations, teasing, and jokes about Lynch's father constitute actionable harassment based on Lynch's sex. See Tonkyro v. Sec'y, Dep't of Veterans Affs., 995 F.3d 828, 838 (11th Cir. 2021) ("Nothing in the record allows the conclusion that [plaintiff's coworker's] conduct had anything to do with [plaintiff's] sex."); see also Huffman v. City of Prairie Vill., 980 F. Supp. 1192, 1199 (D. Kan. 1997) (finding there was "no indication that [supervisor's] actions were taken because of the plaintiff's sex" and that the "mere fact that plaintiff [was] female [did] not make [her supervisor's] conduct discriminatory," since plaintiff admitted that her supervisor "took various actions against her because [she] was jealous of and angry with her due to her involvement with [her] boyfriend").  Accordingly, Lynch has failed to state a plausible claim of hostile work environment sexual harassment.

Even if Lynch had alleged facts to support finding that she experienced discrimination because of her sex, her complaint still would be subject to dismissal because she has failed to allege facts that plausibly establish the severe and pervasive element of a sexual harassment claim.  "Although a plaintiff need not plead a *prima facie* case of hostile work environment in the complaint," McKeithan v. Boarman, 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (citation omitted), aff'd in part, No. 11-5247, 2012 WL 1450565 (D.C. Cir. Apr. 12, 2012) (per curiam), and aff'd sub nom. McKeithan v. Vance-Cooks, 498 F. App'x 47 (D.C. Cir. 2013) (per curiam) (unpublished); see also

Henderson v. JP Morgan Chase Bank, N.A., 436 F. App'x 935, 937 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted), she must still plead sufficient facts to show that her work environment was "permeated with discriminatory intimidation, ridicule, and insult," that was "sufficiently severe or pervasive" to have altered the terms, conditions, or privileges of her employment, see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal marks omitted); Miller, 277 F.3d at 1275 (citation omitted). The Eleventh Circuit has noted that the "severe or pervasive" requirement "is the element that tests the mettle of most sexual harassment claims." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000), abrogated on other grounds as recognized by Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008) (citation omitted). "And, to be actionable under the statute, the Supreme Court has 'made it clear that [the] conduct must be extreme.'" Fields v. Atlanta Indep. Sch. Sys., 916 F. Supp. 2d 1348, 1368 (N.D. Ga. 2013) (alteration in original) (citation and internal marks omitted) (quoting Faragher, 524 U.S. at 788), adopted at 1350.

"Whether harassing conduct is sufficiently severe or pervasive to alter the terms and conditions of a plaintiff's employment includes an objective and a subjective component." Blackmon v. Wal-Mart Stores E., L.P., 358 F. App'x 101, 102 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted); see also Faragher, 524 U.S. at 787; Agee v. Potter, 216 F. App'x 837, 839 (11th Cir. 2007) (per curiam) (unpublished); Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). "The

plaintiff must subjectively perceive the environment to be abusive, and the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment." Blackmon, 358 F. App'x at 102 (citation omitted). Thus, the relevant inquiry is whether a reasonable person in Lynch's position would find the harassment severe and pervasive. See Johnson, 234 F.3d at 509. "This 'inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.'" Wilborn v. S. Union State Cmty. Coll., 720 F. Supp. 2d 1274, 1296 (M.D. Ala. 2010) (quoting Oncale, 523 U.S. at 81); see also Agee, 216 F. App'x at 839 (citation and internal marks omitted) ("Ultimately, courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive."). "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between teasing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Wilborn, 720 F. Supp. 2d at 1296 (alteration in original) (citation and internal marks omitted); see also Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 811 (11th Cir. 2010) (citation omitted).

The Eleventh Circuit has identified the following factors that should be considered in this analysis: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere

offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  Mendoza, 195 F.3d at 1246 (citation omitted); see also Blackmon, 358 F. App'x at 102-03 (citation omitted); Ellison v. City of Atlanta, CIVIL ACTION NO. 1:23-CV-4067-TWT-CCB, 2024 WL 5701068, at *5 (N.D. Ga. Aug. 5, 2024) (citation omitted), adopted by 2024 WL 5700934, at *1 (N.D. Ga. Sept. 9, 2024); Griffith, 2016 WL 8938585, at *17 (citations omitted).  Proof is not required on each factor individually as the Court must consider the totality of the circumstances. Hulsey, 367 F.3d at 1248 (citation omitted); see also Harris, 510 U.S. at 23; Dar Dar v. Associated Outdoor Club, Inc., 201 F. App'x 718, 721 (11th Cir. 2006) (per curiam) (unpublished); Ellison, 2024 WL 5701068, at *5 (citations and internal marks omitted) (explaining that these factors guide the Court's "inquiry[ and] are neither elements nor requirements," as the Court's "task is to determine under the totality of the circumstances whether the harassing conduct altered the terms or conditions of the plaintiff's employment").[7]

In analyzing the "sufficiently severe or pervasive" element of a sexual harassment case, courts emphasize that "Title VII is not a federal civility code[.]"

---

[7] Additionally, while the Eleventh Circuit "examine[s] the statements and conduct complained of collectively to determine whether they were sufficiently pervasive or severe to constitute sexual harassment, the statements and conduct must be of a sexual or gender-related nature . . . before they are considered in determining whether the severe or pervasive requirement is met."  Gupta, 212 F.3d at 583 (citations omitted).

Breda v. Wolf Camera, Inc., 148 F. Supp. 2d 1371, 1375 (S.D. Ga. 2001) (citations omitted) (quoting Mendoza, 195 F.3d at 1245); see also Jones v. Mabus, No. 1:11–CV–148 (WLS), 2013 WL 4662821, at *6 (M.D. Ga. Aug. 29, 2013) (alterations in original) (citation and internal marks omitted) ("It is well established that rude, insulting, and insensitive conduct that fall[s] more in the category of epithets or boorish behavior . . . [is] not actionable under Title VII."); Smith v. Pefanis, 652 F. Supp. 2d 1308, 1327 (N.D. Ga. 2009) (alteration in original) (citation and internal marks omitted) ("[Title VII] is not designed to purge the workplace of vulgarity."). "This requirement is regarded 'as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory conditions of employment.'" Breda, 148 F. Supp. 2d at 1376 (internal marks omitted) (quoting Oncale, 523 U.S. at 81). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious)" will not amount to a hostile work environment. Faragher, 524 U.S. at 788 (citations omitted).

Lynch alleges that Lane-Peterson's repeatedly expressed desire over more than seven months "to have sex with [ her] dad, then proudly shar[ing] her plan to do so, which she followed through on," constitutes severe and pervasive harassment. [Doc. 10 at 9]. Viewing the allegations of the complaint in the light most favorable to Lynch, she has failed to state a claim for hostile work environment sexual harassment

because she has not plausibly alleged that the harassment complained of was sufficiently severe or pervasive to alter the terms and conditions of her employment under existing precedent. "All the sexual hostile work environment cases decided by the Supreme Court [have] involved patterns or allegations of extensive, long lasting, unredressed and uninhibited sexual threats or conduct that permeated the plaintiff's work environment." Webb-Edwards v. Orange Cnty. Sheriff's Off., 525 F.3d 1013, 1028 (11th Cir. 2008) (alteration, citation, and internal marks omitted), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346 (2024); see also Byrd v. Donahoe, CIVIL ACTION NO. 1:11-cv-00208-TCB-RGV, 2013 WL 12097641, at *12 (N.D. Ga. Oct. 18, 2013) (citation omitted), adopted by 2013 WL 12106197, at *2 (N.D. Ga. Nov. 21, 2013), aff'd sub nom. Byrd v. Postmaster Gen., 582 F. App'x 787 (11th Cir. 2014) (per curiam) (unpublished). This is not such a case.

The alleged sexual harassment consisted of comments that Lane-Peterson repeatedly made about Lynch's father and her desire to have a sexual relationship with him, which allegedly came to fruition, and while Lane-Peterson's conduct was no doubt offensive and indefensible behavior, "the conduct alleged in this case is considerably less severe than that which the Eleventh Circuit has repeatedly found insufficient to establish a hostile work environment." Campbell v. Sloss Indus., Case No.: 2:09-cv-1566-IPJ, 2010 WL 11565832, at *7 (N.D. Ala. July 22, 2010) (collecting cases); see also Allen v. Ambu-Stat, LLC, 799 F. App'x 703, 705, 710 (11th Cir. 2020)

(per curiam) (unpublished) (allegations that harasser made several comments about plaintiff's appearance and other "crude sexual references" found not to be sufficiently severe or pervasive); Guthrie v. Waffle House Inc., 460 F. App'x 803, 804-05 (11th Cir. 2012) (per curiam) (unpublished) (internal marks omitted) (allegations of harassment by a supervisor and coworker over an 11-month period in which one of the men grabbed plaintiff's "butt two to five times" and put his arm around her shoulder, among other things; the other man kissed her on the cheek; and both men repeatedly "talked dirty" to her found to be insufficient as a matter of law); Mitchell v. Pope, 189 F. App'x 911, 913-14 (11th Cir. 2006) (per curiam) (unpublished) (sixteen specific incidents of offensive conduct, including touching and attempts to touch plaintiff, trying to kiss her, picking her up, opening the bathroom door and turning the lights off when plaintiff was in there, and explicit comments about her anatomy not severe for liability under Title VII); Davis v. Baroco Elec. Constr. Co., No. CIV. A. 99-1055-S, 2000 WL 33156436, at *2, 6-7 (S.D. Ala. Dec. 15, 2000) (two or three sexual remarks a day and four incidents of physical conduct over several days not shown to interfere with plaintiff's job fell short of actionable hostile work environment sexual harassment). Accordingly, Javara's motion to dismiss Lynch's hostile work environment sexual harassment claim is due to be granted.

## b. Retaliation

Lynch alleges a claim of retaliatory sexual harassment, asserting that she "engaged in statutorily protected activity by objecting to and complaining about sexual harassment" when she "complained repeatedly to [] Lane-Peterson and to [] Carignan about [] Lane-Peterson's repeated sex-based comments about sleeping with her father, [A.] Lynch." [Doc. 1 ¶ 56].  Lynch alleges that the harassment against her "only got worse after she complained about it," as Lane-Peterson continued "to make crass comments, [and] she actually escalated her lewd behaviors by 1) stealing [A.] Lynch's contact information; 2) reaching out to him affirmatively and sending him lewd messages and nude photographs and videos; and 3) having sex with him." [Id. ¶ 57].  Lynch also alleges that even after she reported to Carignan that Lane-Peterson had "slept with her father, nothing was done," and Carignan admitted "that she'd sought guidance on what to do and was told to do nothing." [Id. ¶ 58].  Lynch claims that Javara subjected her "to retaliatory harassment because she opposed, objected to, and complained about a hostile work environment, which culminated in [] Lane-Peterson repeatedly sleeping with [A.] Lynch." [Id. ¶ 59].  Javara moves to dismiss Lynch's retaliation claim, arguing that she "cannot plausibly state a claim for retaliation because she did not engage in protected activity, there was no adverse action, and no causal connection between any protected activity and adverse action." [Doc. 7 at 2].

"Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee because [s]he has opposed any practice made an unlawful employment practice by [Title VII]" or "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) (internal marks omitted) (quoting 42 U.S.C. § 2000e-3(a)); see also Ray v. City of Tallahassee, 664 F. App'x 816, 818 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted). "To state a viable claim for retaliation under [] Title VII," Lynch "must plead facts that plausibly support a finding that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action;[8] and (3) there was a causal link between the protected expression and adverse action." Stewart v. Jones Utility & Contracting Co., 806 F. App'x 738, 742 (11th Cir. 2020) (per curiam) (unpublished) (citation omitted); see also Arafat v. Sch. Bd. of Broward

---

[8] Actionable conduct within a Title VII retaliation claim "extends beyond workplace-related or employment-related retaliatory acts and harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Instead, a viable Title VII retaliation claim "merely requires the employee to show that a reasonable employee would have found the challenged action materially adverse, meaning the reasonable worker would be dissuaded from making or supporting a charge of discrimination," and thus, "it [] is appropriate to refer to the 'adverse employment action' element as the 'materially adverse action' element." EEOC v. Eagle Mgmt. Grp., CIVIL ACTION FILE NO. 1:05-CV-1215-WBH/AJB, 2006 WL 8435746, at *6 n.14 (N.D. Ga. Sept. 18, 2006) (citation omitted), adopted by 2007 WL 9710021, at *1 (N.D. Ga. Jan. 31, 2007).

Cnty., 549 F. App'x 872, 874 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted).

In order to state a claim of retaliation under Title VII, Lynch must "show that [] she engaged in statutorily protected expression[.]" McShane v. U.S. Att'y Gen., 144 F. App'x 779, 788 (11th Cir. 2005) (per curiam) (unpublished) (citation omitted). "The Eleventh Circuit recognizes 'two forms of statutorily protected conduct' under Title VII." Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1308 (N.D. Ga. 2001) (quoting Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999)); see also Sherk v. Adesa Atlanta, LLC, 432 F. Supp. 2d 1358, 1369 (N.D. Ga. 2006) (citation omitted), adopted at 1361. "An employee is protected from discrimination if (1) [s]he has opposed any practice made an unlawful employment practice by [Title VII] (the opposition clause) or (2) [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII] (the participation clause)." Hudson, 209 F. Supp. 2d at 1308 (citations and internal marks omitted); see also Joseph v. Napolitano, 839 F. Supp. 2d 1324, 1335 (S.D. Fla. 2012) (citations omitted). An "employee who seeks protection under the opposition clause must have a 'good faith, reasonable belief' that her employer has engaged in unlawful discrimination." Clover, 176 F.3d at 1351 (citation omitted). "In contrast to claims made under the opposition clause, there is no reasonable good faith belief

requirement for claims under the participation clause." <u>Wesolowski v. Napolitano</u>, 2 F. Supp. 3d 1318, 1345 (S.D. Ga. 2014) (citation omitted).

"Statutorily protected expression includes internal complaints of discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits." <u>Gerard v. Bd. of Regents of Ga.</u>, 324 F. App'x 818, 825 (11th Cir. 2009) (per curiam) (unpublished) (citing <u>Pipkins v. City of Temple Terrace</u>, 267 F.3d 1197, 1201 (11th Cir. 2001)). Accepting Lynch's assertion that both Carignan and Lane-Peterson were her superiors, her complaints to them would qualify as protected activity, but she must have had a good faith, reasonable belief that Javara was engaged in unlawful employment practices to plausibly state a claim for retaliation under Title VII. <u>See</u> <u>Ross v. City of Perry</u>, 396 F. App'x 668, 671 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted); <u>Williams v. Ga. Dep't of Corrs.</u>, No. 1:13-cv-03084-WSD, 2014 WL 3956039, at *4 (N.D. Ga. Aug. 13, 2014) (citations omitted) ("An employee engages in protected activity if [s]he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII[.]"); <u>see also</u> <u>Scott v. Nissan of S. Atlanta, LLC</u>, CIVIL ACTION FILE NO. 1:07-CV-0178-CC-JFK, 2008 WL 11320063, at *7 (N.D. Ga. May 16, 2008) (alteration, citation, and internal marks omitted) ("When a plaintiff's retaliation claim is based on complaints of sexual harassment, the plaintiff is required to show that a good faith, reasonable belief that she was the victim of hostile work environment

sexual harassment led her to report the harasser's conduct[.]"), adopted by 2008 WL 11320089, at *1 (N.D. Ga. June 6, 2008). "[T]his standard has both a subjective and an objective component," such that a "plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1213 (11th Cir. 2008) (emphasis and citation omitted). "[T]he employer's practice, which a plaintiff opposes does not in fact have to be unlawful . . .; rather, the employee need only have a reasonable belief that the employer's practices are discriminatory." Danner v. Sumter Cnty. Bd. of Educ., No. 7:12–CV–02391–RDP, 2013 WL 754956, at *4 (N.D. Ala. Feb. 26, 2013) (citations and internal marks omitted); see also Ashford v. Northside Hosp., Inc., CIVIL ACTION FILE NO. 1:24-CV-140-MHC-RGV, 2024 WL 5700125, at *3 (N.D. Ga. Aug. 15, 2024) (citation omitted) (explaining that the conduct opposed need not "actually be sexual harassment, but it must be close enough to support an objectively reasonable belief that it is"). "Whether the employee's belief was objectively reasonable is measured against existing substantive law." Peart v. Delta Airlines Glob. Servs., CIVIL ACTION NO. 1:14-CV-00116-MHS-LTW, 2015 WL 10960877, at *8 (N.D. Ga. Feb. 11, 2015) (citations omitted), adopted by 2015 WL 10960878, at *1 (N.D. Ga. Mar. 5, 2015); see also

Peterson v. Corrs. Corp. of Am., Case No. 5:14cv265-MW/CJK, 2015 WL 5698501, at *4 (N.D. Fla. Sept. 28, 2015) (citation omitted).

For the reasons already discussed with respect to Lynch's claim of hostile work environment sexual harassment, she fails to state a plausible retaliation claim because she did not have an objectively reasonable belief that the conduct about which she complained was an unlawful employment practice under Title VII. "Merely complaining of working conditions without attributing the complaints to an illegitimate criterion does not constitute opposition to an unlawful employment action and is not protected activity." Cherry v. Ritenour Sch. Dist., 253 F. Supp. 2d 1085, 1099 (E.D. Mo. 2003) (citation omitted), aff'd, 361 F.3d 474 (8th Cir. 2004); see also Smith v. Outdoor Network Distrib., LLC, 626 F. Supp. 3d 1320, 1345 (M.D. Ga. 2022) (alteration, citation, and internal marks omitted) (explaining that "a plaintiff engages in statutorily protected activities when he complains to the EEOC or to [his] supervisor about illegal discrimination"). Measured against the existing substantive law previously discussed, Lynch's "belief that [Lane-Peterson] sexually harassed her by creating a hostile work environment was an objectively unreasonable belief" that "came nowhere near actionable sexual harassment," and therefore, she "has failed to state a retaliation claim based on [her complaints about Lane-Peterson's alleged comments and conduct]." Hudson, 209 F. Supp. 2d at 1317. Thus, Lynch did not complain about conduct made unlawful by Title VII when she objected to and

29

complained about Lane-Peterson's repeated sex-based comments about sleeping with her father because that conduct did not constitute sexual harassment, since it was not based on Lynch's sex.  See <u>Hawk v. Atlanta Peach Movers</u>, 469 F. App'x 783, 785-86 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted) (finding complaint that employer "acted unfairly towards" plaintiff was not statutorily protected activity because nothing in the complaint "suggested that [the employer] was discriminating against him based on a protected ground"); <u>Stucky v. Dep't of Educ.</u>, 283 F. App'x 503, 505 (9th Cir. 2008) (unpublished) (citations omitted) (explaining that the "union grievances [plaintiff] filed after 2000 [did] not qualify as protected activities because the record [did] not establish that they were lodged in opposition to Title VII violations"); <u>Schultz v. City of Hapeville</u>, CIVIL ACTION NO. 1:08-cv-3222-WSD-RGV, 2010 WL 11493296, at *11 (N.D. Ga. Jan. 15, 2010) (alterations in original) (citation and internal marks omitted) ("[I]t is not enough for a plaintiff to show that [he] opposed garden-variety unfairness or harsh treatment in the workplace; [he] is only protected from retaliation if the practice [he] opposed or complained about is specifically prohibited by Title VII."), adopted by 2010 WL 11493295, at *3 (N.D. Ga. Feb. 9, 2010).  Consequently, Lynch's retaliation claim is due to be dismissed because she has failed to allege facts that support a plausible claim that she engaged in protected activity.

### c.      Constructive Discharge

Lynch also asserts a claim of constructive discharge, alleging that in the face of all of the "ongoing, severe and pervasive harassment" by Lane-Peterson and "because [] Carignan and Javara admittedly refused to take any action with respect to [] Lane-Peterson, [ she] was left with no choice but to resign her employment." [Doc. 1 ¶ 72].  Javara contends that Lynch "cannot establish a claim of constructive discharge because [she] did not establish intolerable working conditions justifying a resignation."  [Doc. 7 at 2].

"'Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job.'"  Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009) (citations omitted).  "The Eleventh Circuit has observed that the standard for proving constructive discharge is higher than the standard for proving a hostile work environment."[8]  Anaga-Nwoke v. Lockheed Martin Corp., CIVIL ACTION NO. 1:18-CV-0254-LMM-JSA, 2018 WL 8368660, at *5 (N.D. Ga. Apr. 30, 2018) (citation and internal marks omitted), adopted by 2018 WL 8368849, at *1 (N.D. Ga. May 22, 2018).  "Thus, a plaintiff who alleges

_____

[8] "Unlike a hostile work environment claim, which considers a plaintiff's subjective feelings and objective factors, a constructive discharge claim involves only an objective standard."  McWhorter v. Kindercare Learning Ctrs., LLC, Civil Action File No. 1:11–CV–04447–TWT–GGB, 2012 WL 2513502, at *5 (N.D. Ga. May 31, 2012) (citations omitted), adopted by 2012 WL 2504010, at *1 (N.D. Ga. June 27, 2012).

constructive discharge must show more than just a Title VII violation." Id. (citation omitted). Instead, "[a] plaintiff claiming constructive discharge must show a greater severity or pervasiveness of harassment such that resignation is the only reasonable response." Id. (citation and internal marks omitted). That is, "[t]here must be a high degree of deterioration in an employee's working conditions, approaching the level of intolerable." Id. (citation and internal marks omitted). And, while an isolated episode can form the basis of a constructive discharge, "for that to be the case, the episode must be a particularly high severity." Id. Furthermore, "[c]onstructive discharge is difficult to show if the supposedly 'intolerable' conditions lasted only for a short time," and it "will generally not be found if the employer is not given sufficient time to remedy the situation." Jones v. USA Petroleum Corp., 20 F. Supp. 2d 1379, 1383 (S.D. Ga. 1998) (citations and internal marks omitted).[9]

---

[9] "While not an independent claim under Title VII, the Eleventh Circuit has long recognized that constructive discharge can qualify as an adverse employment decision for purposes of discrimination claims." Smith v. Akstein, 408 F. Supp. 2d 1309, 1323 n.17 (N.D. Ga. 2005) (citation omitted). Lynch, however, has set forth a separate claim for constructive discharge in her complaint, see [Doc. 1 ¶¶ 65-77], and the parties appear "to address [Lynch's] allegations of constructive discharge as a separate cause of action," but the Court "is not aware of, and the parties have not presented, any authority suggesting that constructive discharge is a separate cause of action under federal law," Smith, 408 F. Supp. 2d at 1323 n.17 (citation omitted); see also Burks v. Wellstar Health Sys., Inc., CIVIL ACTION NO. 1:23-CV-5807-SEG-WEJ, 2024 WL 5320187, at *3 (N.D. Ga. Dec. 2, 2024). Nevertheless, even assuming that Lynch could bring a standalone constructive discharge claim under Title VII, any such claim fails for the reasons discussed hereinafter.

Since Lynch has failed to state a plausible claim of hostile work environment sexual harassment, it follows that her complaint similarly fails to state a claim of constructive discharge premised on the same allegations. See Ates v. Gov't Emps. Ins. Co., CIVIL ACTION NO. 5:24-cv-00201-TES, 2024 WL 4583192, at *6 n.7 (M.D. Ga. Oct. 25, 2024) (citations omitted). In other words, because Lynch has not alleged facts to plausibly establish "even that the harassment was severe or pervasive enough to constitute a hostile working environment; *a fortiori*, she has not shown that her working conditions were so intolerable that she was forced to resign." Cromer v. Crowder, 273 F. Supp. 2d 1329, 1336 (S.D. Fla. 2003) (citation and internal marks omitted); see also Standifer v. Sonic-Williams Motors, LLC, 401 F. Supp. 2d 1205, 1220-21 (N.D. Ala. 2005) ("[Plaintiff] failed to meet even the standard for a hostile work environment. She, therefore, cannot meet the higher standard for constructive discharge."); Henderson v. Leroy Hill Coffee Co., No. Civ. A. 99-1067CBS, 2001 WL 103147, at *10 (S.D. Ala. Jan. 30, 2001) (citations omitted) ("Although Title VII sexual harassment and constructive discharge are separate issues to be addressed separately, where a plaintiff is unable to support a hostile work environment claim, she is also unable to support a claim of constructive discharge."). Lynch's allegations fail to "suggest or indicate such objectively intolerable working conditions that would compel a reasonable person to resign," McWhorter, 2012 WL 2513502, at *5, and "[c]ourts in this circuit have failed to find that an employer constructively

33

discharged plaintiffs in situations more egregious than those alleged in this case," id. (citations omitted); see also Cramer v. Bojangles' Rests., Inc., Civil Action No. 2:10–CV–0159–RWS–SSC, 2012 WL 716176, at *15 (N.D. Ga. Feb. 8, 2012), adopted by 2012 WL 716028, at *1 (N.D. Ga. Mar. 6, 2012), aff'd, 498 F. App'x 885 (11th Cir. 2012) (per curiam) (unpublished).

### d.     State Law IIED Claim

Finally, Lynch asserts a state law IIED claim against Javara and Lane-Peterson, alleging that Lane-Peterson "engaged in intentional, reckless conduct when making lewd and crass comments about [A.] Lynch to [ her], then by stealing [A.] Lynch's contact information and meeting up with him for sex," [Doc. 1 ¶ 79], and "Javara engaged in intentional and reckless conduct when refusing to intervene in response to [ her] repeated requests for help," [id. ¶ 80], and that Lane-Peterson's conduct, as well as Javara's conduct in failing or refusing to stop Lane-Peterson or discipline her in any way, "was extreme and outrageous and outside the bounds of all accepted decency," [id. ¶¶ 81-82].  Javara moves to dismiss Lynch's IIED claim, arguing that Lynch "cannot establish a claim for [IIED] because [she] failed to: allege intentional, reckless[,] extreme[,] or outrageous conduct by [ Javara], a requisite causal connection between wrongful conduct and emotional distress, and severe emotional distress."  [Doc. 7 at 2].

Although supplemental jurisdiction may be exercised over state law claims related to federal claims in any action in which the Court has original jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote and citation omitted), superseded by statute on other grounds, Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22 (2025); Scarfo v. Ginsberg, 175 F.3d 957, 962 (11th Cir. 1999); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) (per curiam). Since Javara's motion to dismiss is due to be granted on Lynch's claims, the Court need not exercise supplemental jurisdiction over her state law IIED claim against defendants, and if all the Title VII claims are dismissed, it is **RECOMMENDED** that Lynch's IIED claims against defendants be **DISMISSED WITHOUT PREJUDICE**. Ingram v. Sch. Bd. of Miami-Dade Cnty., 167 F. App'x 107, 108 (11th Cir. 2006) (per curiam) (unpublished); see also Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1327 (N.D. Ga. 2009) ("In this case, the state law claims are best left for the Georgia courts."), adopted at 1290. However, if jurisdiction is retained, Javara's motion to dismiss is due to be granted on Lynch's IIED claim as well for the reasons that follow.

To state a claim for IIED under Georgia law, Lynch must show: "(1) that the defendants engaged in intentional or reckless conduct; (2) that the conduct was

extreme and outrageous; (3) that there is a causal connection between the wrongful conduct and [Lynch's] emotional distress; and (4) that [Lynch's] emotional distress is severe." Higdon v. Jackson, 393 F.3d 1211, 1222 (11th Cir. 2004) (citation omitted); see also Hill v. Macon Police Dep't, No. 5:10–CV–472 (CAR), 2013 WL 594200, at *14 (M.D. Ga. Feb. 15, 2013) (citation omitted). "[T]he burden which [ Lynch] must meet in order to prevail in this cause of action is a stringent one[.]" Quarles v. McDuffie Cnty., 949 F. Supp. 846, 855 (S.D. Ga. 1996) (citation and internal marks omitted). Indeed, according to the Georgia Court of Appeals:

> It [is] not [] enough that the defendant has acted with an intent which is tortious or even criminal, or that [it] has intended to inflict emotional distress, or even that [its] conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Abdul-Malik v. AirTran Airways, Inc., 678 S.E.2d 555, 559 (Ga. Ct. App. 2009). Rather, liability is only found where a defendant's conduct amounts to a "major outrage," Anderson, 678 F. Supp. 2d at 1331 (citation and internal marks omitted), that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," Hajhossein v. City of Statesboro, No. 609CV048, 2010 WL 538209, at *3 (S.D. Ga. Feb. 12, 2010) (citation and internal marks omitted). Moreover, "'[e]ven malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed at the plaintiff.'" Catalano v. GWD Mgmt. Corp., No.

CV 403-167, 2005 WL 5519861, at *8 n.5 (S.D. Ga. Mar. 30, 2005) (citation omitted), aff'd, 199 F. App'x 803 (11th Cir. 2006) (per curiam) (unpublished).

While the "'existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise non-egregious conduct outrageous,'" Anderson, 678 F. Supp. 2d at 1331 (quoting Trimble v. Cir. City Stores, Inc., 469 S.E.2d 776, 778 (Ga. Ct. App. 1996)), "the existence of the employer-employee relationship is not dispositive," Troncalli v. Jones, 514 S.E.2d 478, 482 (Ga. Ct. App. 1999). "Regardless of the existence of such relationship, however, it must be emphasized that major outrage in the language or conduct complained of is essential to the tort." Wilcher v. Confederate Packaging, Inc., 651 S.E.2d 790, 792 (Ga. Ct. App. 2007) (citation and internal marks omitted). "[D]erogatory comments in the employment context generally do not meet the extreme and outrageous conduct element." MackMuhammad v. Cagle's Inc., 379 F. App'x 801, 806 (11th Cir. 2010) (per curiam) (unpublished) (citation and internal marks omitted).

The allegations of Lynch's complaint fall short of stating a plausible IIED claim against Javara because she has failed to allege facts suggesting that Javara engaged in "extreme and outrageous" conduct or that she suffered any "severe" emotional distress as a result of Javara's actions. See Hill, 2013 WL 594200, at *14 (alteration in original) (footnote, citation, and internal marks omitted) (noting that, while emotional distress "includes all highly unpleasant mental reactions such as fright,

horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea," the "law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it"); see also id., at *14 n.110 (citing Witter v. Delta Airlines, 966 F. Supp. 1193, 1201 (N.D. Ga. 1997), aff'd, 138 F.3d 1366 (11th Cir. 1998)) (finding that "anxiety, sleeplessness, overeating, diarrhea and headaches, were not 'severe' for purposes of intentional infliction of emotional distress claim"). Considering the nature of conduct in other cases found to be insufficient to support an IIED claim, Lynch's allegations similarly fall short of stating a plausible claim. See Spears v. Kaiser Found. Health Plan of Ga., Inc., CIVIL ACTION NO. 1:17-cv-02102-TCB-RGV, 2019 WL 1225214, at *32-33 (N.D. Ga. Jan. 30, 2019) (supervisor's alleged sexual harassment and Kaiser's termination of plaintiff's employment, even considering that the parties had an employer-employee relationship, were insufficient to support IIED claim), adopted by 2019 WL 1225199, at *1 (N.D. Ga. Feb. 14, 2019); Smith, 408 F. Supp. 2d at 1317-18, 1335-36 (granting summary judgment for employer and ophthalmologist on IIED claim because conduct was insufficiently egregious where ophthalmologist touched plaintiff female office receptionist in a sexual manner, inquired whether the plaintiff gave sexual massages, made comments on her appearance, and expressed desire to kiss her and wine and dine her); Kimsey v. Akstein, 408 F. Supp. 2d 1281, 1288-89, 1307 (N.D. Ga. 2005) (finding no IIED where defendant touched plaintiff's breast on two

occasions, engaged in less offensive touching on other occasions, and made sexually harassing comments).

Lynch's complaint also fails to allege facts plausibly showing that she has suffered extreme emotional distress as she simply alleges that she "has suffered emotional distress" that she describes as "severe and [] directly attributable to [] Lane-Peterson and Javara's wrongful and outrageous conduct."  [Doc. 1 ¶¶ 83-84].  However, these allegations amount to little more than "an unadorned, the defendant[s]-unlawfully-harmed-me accusation," Ashcroft, 556 U.S. at 678 (citation omitted), which is insufficient to survive Javara's motion to dismiss.  Simply asserting that she suffered emotional distress without any "allegation about any resulting treatment or diagnosis of severe emotional distress, is insufficient to meet the fourth element of the IIED claim." Monsrud v. Regenerative Orthopaedics & Spine Inst., P.C., CIVIL ACTION FILE NO. 1:20-CV-1571-AT-WEJ, 2020 WL 12654451, at *10 (N.D. Ga. Sept. 9, 2020) (citation omitted), adopted sub nom. Monsrud v. Regenerative Orthopaedics, CIVIL ACTION NO. 1:20-cv-1571-AT, 2020 WL 12654449, at *1 (N.D. Ga. Sept. 29, 2020); see Ghodrati v. Stearnes, 723 S.E.2d 721, 723 (Ga. Ct. App. 2012) (explaining that anxiety, sleeplessness, embarrassment and loss of confidence did not constitute stress so severe that a reasonable person could not endure it, and merely seeking counseling after leaving employment, without providing any record of a diagnosis, was insufficient to meet the plaintiff's burden

of establishing severe emotional distress).  Accordingly, Lynch's IIED claim against

Javara is due to be dismissed.  <u>See</u> <u>Maultsby ex rel. Maultsby v. Senior Living Mgmt.</u>,

No. 8:09–cv–2037–T–30EAJ, 2010 WL 1408428, at *3 (M.D. Fla. Apr. 5, 2010)

(summarily dismissing IIED claim where plaintiff "failed to allege any of the[]

required elements").

**B.**     **<u>Failure to Effect Service of Process Upon Lane-Peterson</u>**

This Court's docket reflects that Lane-Peterson has not been properly served

with process as Lynch's counsel filed an "Affidavit of Nonservice" on January 2,

2025, [Doc. 11 (emphasis and all caps omitted)], in which the process server states

that despite "careful inquiry and diligent attempts, [he] was unable to serve [] Lane-

Peterson as [he] could not find the subject or information as to the location of [ her]

whereabouts," [<u>id.</u> at 1].[10]   However, it does not appear that Lynch has made any

further attempts to serve Lane-Peterson, nor has she moved for substituted or

alternative service.

Rule 4 of the Federal Rules of Civil Procedure provides that "[t]he plaintiff is

responsible for having the summons and complaint served within the time allowed

---

[10] The affidavit discusses five attempts to serve Lane-Peterson at her purported
address between November 29 and December 6, 2024.  [Doc. 11 at 1-2].  The process
server indicated there was no answer at the door and no vehicles observed on any
attempt, and while the lights were on during two attempts, movement was heard
only during the fourth attempt.  [<u>Id.</u>].  In fact, two of the five attempts were on the
same day with the remaining three attempts occurring within the week.  [<u>Id.</u>].

by Rule 4(m)[.]" Fed. R. Civ. P. 4(c)(1). In particular, "Rule 4(m) of the Federal Rules of Civil Procedure requires that a plaintiff serve each defendant within 90 days of filing the complaint." Tatum v. Bank of Am., N.A., CIVIL ACTION FILE NO. 1:15-CV-3076-ODE-CMS, 2016 WL 4445265, at *3 (N.D. Ga. May 18, 2016) (citation omitted), adopted by 2016 WL 11745951, at *1 (N.D. Ga. Sept. 12, 2016).[11] "Ultimately, a plaintiff is responsible for timely serving process on the defendant." Simms v. Deutsche Bank Nat'l Tr. Co., No. 1:12–cv–4493–WSD, 2014 WL 273236, at *3 (N.D. Ga. Jan. 22, 2014) (citing Anderson v. Osh Kosh B'Gosh, 255 F. App'x 345, 347 (11th Cir. 2006) (per curiam) (unpublished)). "Failure to comply with this rule will result in dismissal of the complaint without prejudice unless the plaintiff can show good cause why service was not made within that period." Davis v. Mortg. Elecs. Registration Sys., Inc., Civil Action No. 1:09-CV-3109-TWT-CCH, 2010 WL 1529319, at *2 (N.D. Ga. Mar. 2, 2010) (citing Fed. R. Civ. P. 4(m)), adopted by 2010 WL 1529307, at *1 (N.D. Ga. Apr. 13, 2010). "The serving party . . . bears the burden of proof with regard to validity of service or good cause for failure to effect timely service." Anderson, 678 F. Supp. 2d at 1297 (citation omitted).

---

[11] Rule 4(m) was amended, effective December 1, 2015, to reduce the time for perfecting service from 120 days to 90 days. Jackson v. Goldco, LLC, CASE NO.: 1:14-CV-119 (LJA), 2016 WL 1259405, at *3 n.1 (M.D. Ga. Mar. 29, 2016) (citing Fed. R. Civ. P. 4(m)).

Lynch initiated this action in this Court on October 23, 2024, [Doc. 1], and thus, the 90-day time period for perfecting service upon Lane-Peterson has long expired.[12] It is Lynch's burden to show that Lane-Peterson was properly served, see Simms, 2014 WL 273236, at *3 (citation omitted); Ga. ex rel. Saunders v. Mortg. Elec. Reg. Sys., Inc., Civil Action File No. 1:10-CV-3419-TWT-RGV, 2011 WL 1335824, at *5 (N.D. Ga. Mar. 11, 2011), adopted by 2011 WL 1322616, at *1 (N.D. Ga. Apr. 6, 2011), but she has failed to make this showing, and since she has failed to perfect service upon Lane-Peterson in this action within 90 days of the filing of the complaint first

---

[12] Since Lynch failed to perfect service on Lane-Peterson within the permissible 90-day period, the Court may "dismiss the complaint without prejudice [as to Lane-Peterson] unless [Lynch] satisfies her burden of establishing 'good cause.'" Zachery v. Thigpen, 895 F. Supp. 1472, 1475 (M.D. Ala. 1995) (citation omitted). "Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.'" Lepone-Dempsey v. Carroll Cnty. Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007) (citation omitted) (alteration in original). Lynch has not asserted, much less established, good cause for failing to serve Lane-Peterson, nor has she requested an extension of time to serve her. Moreover, the process server's affidavit showing five "service attempts over the course of a single week—at least three of which were made while the home in question was 'quiet' . . . — is not necessarily evidence of evasion." Viegas v. Partner Colo. Credit Union, Civil Action No. 24-cv-00415-PAB-MDB, 2024 WL 5452666, at *6 (D. Colo. Aug. 23, 2024) (citation omitted), adopted by 2025 WL 365865, at *8 (D. Colo. Jan. 31, 2025). Although Lynch has "fail[ed] to show good cause for failing to timely effect service [on Lane-Peterson], [the] court 'must still consider whether any other circumstances warrant an extension of time based on the facts of the case.'" Duncan v. CCA McRae Corr. Facility, No. CV308–047, 2009 WL 1151620, at *1 (S.D. Ga. Apr. 27, 2009) (quoting Lepone-Dempsey, 467 F.3d at 1282), adopted at *1. "Nevertheless, the decision to extend the time for service is within the Court's sound discretion." Id. The Court finds no circumstances on the record before it that warrant an extension of time for Lynch to serve Lane-Peterson.

naming her as a defendant, in accordance with the Federal Rules of Civil Procedure, her claim against Lane-Peterson is due to be dismissed without prejudice, see Owens v. Pinellas Cnty. Sheriff's Dep't, 331 F. App'x 654, 656 (11th Cir. 2009) (per curiam) (unpublished) (citations omitted) ("Pursuant to Fed.R.Civ.P. 41(b), a district court may *sua sponte* dismiss a plaintiff's action for failure to comply with the rules[.]"). Accordingly, it is **RECOMMENDED** that Lynch's claim against Lane-Peterson be **DISMISSED WITHOUT PREJUDICE**.[13]

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Lynch's claims against Lane-Peterson be **DISMISSED WITHOUT PREJUDICE** for failure to serve within the time allowed under Rule 4, and that Javara's motion to dismiss Lynch's claims asserted against it in her complaint, [Doc. 7], be **GRANTED**.

**IT IS SO RECOMMENDED** this 5th day of June, 2025.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[13] To the extent that notice is required, this Report and Recommendation serves as notice to Lynch that this case is subject to dismissal for failure to serve Lane-Peterson. See Anderson, 678 F. Supp. 2d at 1296 (emphasis, citations, and all caps omitted) ("This Report and Recommendation [] serves as notice to [p]laintiffs that if they disagree with this recommendation, they must file timely objections . . . with the District Court, setting forth appropriate evidence and arguments why their failure to serve [d]efendant [] should not result in the dismissal of their claims against him.").